# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONFIDENT TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AXS GROUP LLC, a Delaware corporation; and AEG FACILITIES, LLC, a Delaware corporation,<br><br>Defendants. | Case No.: 17-cv-02181-H-MDD<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 14.] |

On December 22, 2017, Defendants AXS Group LLC and AEG Facilities, LLC filed a motion to dismiss Plaintiff Confident Technologies, Inc.'s complaint. (Doc. No. 14.) On January 8, 2018, Plaintiff filed an opposition to Defendants' motion to dismiss. (Doc. No. 15.) On January 12, 2018, Defendants filed their reply. (Doc. No. 18.)

The Court held a hearing on the matter on January 22, 2018. Trevor Q. Coddington, Donny K. Samporna, and Cody R. LeJeune appeared for Plaintiff. Brian W. LaCorte appeared for Defendants. For the reasons below, the Court denies Defendants' motion to dismiss.

///

///

1

## Background

On October 25, 2017, Plaintiff Confident filed a complaint for patent infringement against Defendants AXS and AEG, alleging infringement of U.S. Patent No. 8,621,578. (Doc. No. 1.) Specifically, Plaintiff alleges that Defendants' use of ReCAPTCHA verification technology in connection with AXS' websites, mobile apps, and ticket purchasing services infringes and/or induces infringement of the '578 Patent. (Id. ¶¶ 9-10, 12.)

The '578 patent is entitled "Methods and Systems for Protecting Website Forms From Automated Access" and "is directed to a method and system of telling apart a human from a computer" through a "graphical image verification system." U.S. Patent No. 8,621,578, at (54), 1:7-8 (filed Dec. 31, 2013). The specification of the '578 patent describes the claimed invention and the state of the prior art at the time of the invention as follows:

> The present invention provides a system and method to tell apart a human from a computer using a test generally known as a Completely Automated Public test to Tell Computers and Humans Apart (hereinafter "CAPTCHA"). Websites, and in particular web-based forms, are often the target of malicious programs designed to register for service on a large scale, consume large amounts of resources or bias results in on-line polls or voting. In response to these malicious programs CAPTCHA-based test have been developed in an attempt to discern between a human's attempt to access a website and automated access to a website.
>
> CAPTCHA tests attempt to require a user to correctly answer a question which only a human could provide a correct answer. Most current CAPTCHA tests are text based and require the user to interpret and input a distorted piece of test presented to the user. However, user friendliness is lacking and automated attacks are not eliminated by current [CAPTCHA] tests. Thus, there remains a need for improved systems and methods to tell apart a human from a computer when allowing access to a website.
>
> . . .
>
> . . .

The present invention provides a method and system for an improved CAPTCHA test which requires users to select randomly generated images from a dynamic graphical arrangement of images. The images the user must select are based on selected categories selected by the verification service provider.

Id. at 2:39-3:16. Figure 1 of the '578 patent provides an illustration of an example of a dynamic graphical arrangement of images as utilized by the claimed invention. Figure 1 is displayed below:



FIG. 1

Independent claim 1 of the '578 patent claims:

A method for generating a completely automated test to tell computers and humans apart comprising:

generating a matrix of non-overlapping randomly selected images in response to an access request of a user, the dynamic graphical arrangement comprising one randomly selected image from a selected image category chosen for an image recognition task and at least one image not from the selected image category, wherein each image is associated with a unique randomly generated

3

access code, wherein the image recognition task comprises an instruction to select one image corresponding to the selected image category from the matrix of non-overlapping randomly selected images;

presenting the dynamic graphical arrangement of randomly selected images to the user and communicating the image recognition task to the user;

receiving an input from the user access device at a server system, the input comprising the unique randomly generated access code associated with the one image from the selected category;

the server system comparing the input from the user access device to an authenticating reference code to confirm the user is a human and not a computer; and

wherein the matrix comprises at least one image known to belong to the selected image category, at least one image known to not belong to the selected image category and at least one image suspected to belong to the selected image category and wherein the user is still granted access to the website when the input from the user access device comprises selection of the at least one image known to belong to the selected image category and selection or omission of the at least one image suspected to belong to the selected image category.

Id. at 9:2-35.

By the present motion, Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of the claims in Plaintiff's complaint on the grounds that the patent-in-suit, the '578 patent, is invalid as a matter of law. (Doc. No. 14-1.) Specifically, Defendants argue that the '578 patent fails to claim patent-eligible subject matter and, therefore, is invalid under 35 U.S.C. § 101. (Id.)

**Discussion**

**I. Legal Standards for a Rule 12(b)(6) Motion to Dismiss**

In patent cases, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is governed by the applicable law of the regional circuit. K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1282 (Fed. Cir. 2013). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading stating a claim for relief containing "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). But, a court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, it is improper for a court to assume the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

///

## II. Legal Standards for Patent Eligibility under § 101

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "'long held that this provision contains an important implicit exception[:] Laws of nature, natural phenomena, and abstract ideas are not patentable.'" Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2116 (2013). "The concern underlying these judicial exclusions is that 'patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity.'" Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1047 (Fed. Cir. 2016).

"The Supreme Court has devised a two-stage framework to determine whether a claim falls outside the scope of section 101." Affinity Labs of Texas, LLC v. DIRECTV, LLC, 838 F.3d 1253, 1257 (Fed. Cir. 2016); see Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347, 2355 (2014). "The prescribed approach requires a court to determine (1) whether the claim is directed to a patent-ineligible concept, i.e., a law of nature, a natural phenomenon, or an abstract idea, and if so, (2) whether the elements of the claim, considered both individually and as an ordered combination, add enough to transform the nature of the claim' into a patent-eligible application." Affinity Labs, 838 F.3d at 1257 (internal quotation marks omitted) (citing Alice, 134 S. Ct. at 2355). "In the context of claims that are challenged as containing only abstract ideas, those two stages are typically referred to as the 'abstract idea' step and the 'inventive concept' step." Id.

"The 'abstract idea' step of the inquiry" requires courts "to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." Id. at 1257. "The 'inventive concept' step requires [courts] to look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed. Id. at 1258. "This inventive concept must do more than simply recite 'well-understood, routine, conventional activity.'" FairWarning IP,

LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1093 (Fed. Cir. 2016). "The accused infringer bears the burden of proof on both steps." InsideSales.com, Inc. v. SalesLoft, Inc., No. 2:16CV859DAK, 2017 WL 2559932, at *2 (D. Utah June 13, 2017); see Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95 (2011).

The Federal Circuit has expressly recognized that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1373 (Fed. Cir. 2016); see also Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1347 (Fed. Cir. 2016) ("Courts may . . . dispose of patent-infringement claims under § 101 whenever procedurally appropriate."). Further, the Federal Circuit has explained that where there is "no claim construction dispute relevant to the eligibility issue," evaluation of a patent claim's subject matter eligibility under § 101 can proceed before claim construction. Genetic Techs., 818 F.3d at 1373; see Cleveland Clinic Found. v. True Health Diagnostics LLC, 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced."); see also Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101.").

### III. Analysis

The Court begins its analysis with step one of the Alice inquiry. Defendants argue that under step one, the '578 patent is directed to an abstract idea because the claimed invention is specifically directed to the abstract idea of an image-recognition test. (Doc. No. 14-1 at 1-2, 8-13; Doc. No. 18 at 2.) In response, Plaintiff argues that the Court should reject Defendants' characterization of the claimed invention as merely being an image-recognition test. (Doc. No. 15 at 1.) Plaintiff argues that the claimed invention is not directed to an abstract idea because the invention is directed to improving an existing technological process, specifically how an online server distinguishes human users from computer users in order to address the problem of automated computers ("bots") accessing

websites. (Id.)

"The step one inquiry focuses on determining 'whether the claim at issue is 'directed to' a judicial exception, such as an abstract idea.'" Apple, Inc. v. Ameranth, Inc., 842 F.3d 1229, 1241 (Fed. Cir. 2016). The Federal Circuit has explained that "[w]hile the two steps of the Alice framework are related, the 'Supreme Court's formulation makes clear that the first-stage filter is a meaningful one, sometimes ending the § 101 inquiry.'" Thales Visionix Inc. v. United States, 850 F.3d 1343, 1347 (Fed. Cir. 2017).

The Federal Circuit has cautioned that the step one inquiry does not "simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon—after all, they take place in the physical world." Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016); see also In re TLI Commc'ns LLC Patent Litig., 823 F.3d 607, 611 (Fed. Cir. 2016) ("[I]n determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because '[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"). "Rather, the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" Enfish, 822 F.3d at 1335.

In so doing, a court should "determine whether the claims 'focus on a specific means or method that improves the relevant technology' or are 'directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'" Apple, 842 F.3d at 1241; see Affinity Labs of Texas, LLC v. Amazon.com Inc., 838 F.3d 1266, 1270 (Fed. Cir. 2016) ("In addressing the first step of the section 101 inquiry, as applied to a computer-implemented invention, it is often helpful to ask whether the claims are directed to 'an improvement in the functioning of a computer,' or merely 'adding conventional computer components to well-known business practices.'"); see also Enfish, 822 F.3d at 1335 ("The Supreme Court has suggested that claims 'purport[ing] to improve the

8

functioning of the computer itself,' or 'improv[ing] an existing technological process' might not succumb to the abstract idea exception."). The Federal Circuit has "held claims ineligible as directed to an abstract idea when they merely collect electronic information, display information, or embody mental processes that could be performed by humans." Thales Visionix, 850 F.3d at 1346-47.

The Court agrees with Plaintiff that the invention claimed in the '578 patent is not directed to an abstract idea. The invention claimed in the '578 patent does not merely collect electronic information, display information, or embody a mental processes that could be performed by humans. Rather, the invention is directed to improving an existing technological process, specifically the process of how an online server is able to discern between a human's attempt to access a website and an automated computer's attempt to access a website – the CAPTCHA test. See '578 Patent at 2:39-49. The '578 patent explains that the prior art CAPTCHA tests – which presented a user with distorted text and required the user to interpret and input that distorted text – lacked user friendliness and were still susceptible to automated attacks from bots. See id. at 2:50-56.

The invention claimed in the '578 patent attempts to improve on the technological process of the CAPTCHA test by utilizing "a matrix of non-overlapping randomly selected images" where "each image is associated with a unique randomly generated access code." Id. at 9:4-11. This matrix of images is then presented to the user along with an "image recognition task compris[ing] an instruction to select one image corresponding to [a] selected image category." Id. at 9:16-18. A "server" then receives the access code associated with the image selected by the user from the "user access device," and the server then compares that access code "to an authenticating reference code to confirm the user is a human and not a computer." Id. at 9:19-25. Accordingly, a review of the '578 patent's claim language and its claimed advancement over the prior art shows that the claimed invention focuses on utilizing a specific means, here a matrix of non-overlapping randomly selected images that is presented to the user along with an image recognition task, to improve an existing technological process, here the CAPTCHA test, in effort to solve a

problem necessarily rooted in computer technology, automated attacks from bots.[1]  See Affinity Labs, 838 F.3d at 1257 (explaining that under step one of the Alice inquiry, a court should focus on the claimed advancement over the prior art).  Accordingly, the '578 patent is not directed to an abstract idea.  See Enfish, 822 F.3d at 1339 ("[T]he claims are directed to a specific implementation of a solution to a problem in the software arts. Accordingly, we find the claims at issue are not directed to an abstract idea."); DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1257 (Fed. Cir. 2014) (finding claims not directed to an abstract idea where "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks"); Trading Techs., 675 F. App'x at 1004–05 ("Precedent has recognized that specific technologic modifications to solve a problem or improve the functioning of a known system generally produce patent-eligible subject matter.").

Further, the Court rejects Defendants' characterization of the invention as merely being an image-recognition test.  In making this characterization, Defendants oversimplify the claimed invention and fail to view it in its proper context.  See TLI Commc'ns, 823 F.3d at 611 (explaining that courts must be careful to "to avoid oversimplifying the claims").  The claimed invention is not simply directed to an image-recognition test in the abstract.  Rather, the claimed invention is directed to a specific type of image recognition

---

[1] Defendants argue that the Court's § 101 analysis should not focus on the technology-based problem of Internet "bots" because this concept is not in the claim language itself.  (Doc. No. 18 at 2.) The Court disagrees.  The Federal Circuit has explained that in analyzing patent-eligibility under § 101, a reviewing court should apply the Alice step one filter to the claims as "considered in light of the specification," in particular what the specification describes as the claimed invention's innovation over the prior art.  Enfish, 822 F.3d at 1335; see Affinity Labs, 838 F.3d at 1257; Intellectual Ventures I LLC v. Erie Indem. Co., 850 F.3d 1315, 1325 (Fed. Cir. 2017).  Thus, in performing step one of the Alice inquiry, it is entirely proper for the Court to consider what the '578 patent's specification describes as the problem addressed by the claimed invention and the claimed invention's purported advancements over the prior art.  See, e.g., Trading Techs. Int'l, Inc. v. CQG, Inc., 675 F. App'x 1001, 1004 (Fed. Cir. 2017) (affirming a district court's patent eligibility analysis under Alice step one where the district court analyzed the specific problems the claimed invention sought to address).  Further, the Court notes that even if it could only consider the language in the claims, the claim language itself expressly states that the purpose of the claimed method is "to tell computers and humans apart."  '578 Patent at 9:2-3.

test that is purportedly useful in assisting an online server with the task of determining whether a user attempting to access a website is a human or a computer/bot. When viewed in this proper context, the claimed invention represents a specific solution to a problem that exists in the computer world and, thus, is not an abstract idea. See Enfish, 822 F.3d at 1339; DDR, 773 F.3d at 1257.

Indeed, the Court agrees with Plaintiff that the claimed invention is directed to solving a problem that currently exists only within the technical world. (Doc. No. 15 at 2.) The need to distinguish humans from computers is an issue specific to computer networking fields. Defendants have failed to identify any comparable situation within the analog world.[2] That the claimed invention focuses on solving a specific problem that exists only in the technical world supports the Court's conclusion that the '578 patent is not directed to an abstract idea.[3] See DDR, 773 F.3d at 1257 ("[T]hese claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet."); Trading Techs., 675 F. App'x at 1004 (affirming district court's conclusion at Alice step one that

---

[2] The Court does not find persuasive Defendants' argument that visual verification tests that utilize a user's photo ID at polling stations for political elections represents a real world example of the problem addressed by the claimed invention. (Doc. No. 18 at 3.) Unlike the test utilized by the claimed invention, in the polling station scenario, the test is being used to determine the user's identity not whether the user is a human or a computer.

Similarly, the Court rejects Defendants' argument presented at the hearing that a visual verification test presented in a children's magazine represents a real world example of the claimed invention. The context and purpose of the visual verification test is different from what is claimed in the '578 patent. In Defendants' example, the test is being administered for the simple purpose of determining whether the user, the child, is able to correctly solve the test. In the '578 patent, the randomized test is being administered in order to determine whether the user is a human or a computer.

[3] In addition, the fact that the claimed invention addresses a problem that is rooted in and only exists in the computer world distinguishes the present case from the cases relied on by Defendants such as FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089 (Fed. Cir. 2016), and Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709 (Fed. Cir. 2014). For example in FairWarning, the Federal Circuit expressly noted that the claims at issue were an attempt to simply computerize methods that had already existed in the analog world for decades. See FairWarning, 839 F.3d at 1095 ("The claimed rules ask . . . the same questions humans in analogous situations detecting fraud have asked for decades, if not centuries.").

the patents at issue are not directed to an abstract idea where the "patents are directed to improvements in existing graphical user interface devices that have no 'pre-electronic trading analog'").

Defendants argue that the methods claimed in the '578 patent can be performed by a human using a pencil and paper. (Doc. No. 14-1 at 3, 8-9, 12; Doc. No. 18 at 2-3.) Cf. Synopsys, Inc. v. Mentor Graphics Corp., 839 F.3d 1138, 1145 (Fed. Cir. 2016) (explaining that a claim is directed to an abstract idea if the claim is directed to a process that could be performed mentally or with pencil and paper). The Court disagrees. First, the claim language requires that the dynamic graphical arrangement of images be "randomly selected." '578 Patent at 9:4, 9:16-17. Defendants fail to adequately explain how a human with a pencil and paper would be able to randomly select the images utilized in the dynamic graphical arrangement of images.[4] Second, Defendants' argument fails to consider the invention in its proper context. The invention is directed to a specific type of image-recognition test in the context of an online server attempting to determine whether a user attempting to access a website is a human or a computer/bot. Defendants fail to adequately explain how a human with a pencil and paper could administer the claimed CAPTCHA test to both human users and computer users in order to determine whether a certain user should be granted access to a website.

Finally, Defendants argue that the '578 patent is directed to an abstract idea because the claim language is too vague and fails to provide any specific hardware or software examples or sample code that provides a precise means for implementing the claimed method. (Doc. No. 14-1 at 2, 4; Doc. No. 18 at 5.) But Defendants fail to provide the Court with any authority holding that in order for a computer-based patent to be patent-eligible under § 101, the claims must be so precise as to specifically provide sample code

---

[4] Defendants argue that a human could randomize the process by utilizing "a coin, rolling dice, or shuffling cards." (Doc. No. 18 at 4.) But as Plaintiff correctly explained at the hearing, in that situation, you would not have just a human with a pencil and paper; it would be a human with a pencil, paper, and some additional device.

12

within the claim language. The Court also notes that Defendants' arguments regarding the specificity of the '578 patent's claim language are premature at this stage in the litigation as the Court has not yet held claim construction proceedings in this case.

In sum, Defendants have failed to establish that the '578 patent is directed to an abstract idea under step one of the Alice inquiry. Accordingly, the Court does not need to proceed to step two of the inquiry. Enfish, 822 F.3d at 1339; see McRO, 837 F.3d at 1312 ("If the claims are not directed to an abstract idea, the inquiry ends."); Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1047 (Fed. Cir. 2016) ("If the answer [to the step one inquiry] is no, the inquiry is over: the claim falls within the ambit of § 101."). At this stage in the proceedings, Defendants have failed to establish that the '578 patent is invalid for failing to claim patent-eligible subject matter as required by 35 U.S.C. § 101. Accordingly, the Court denies Defendants' motion to dismiss.

## Conclusion

For the reasons above, the Court denies Defendants' Rule 12(b)(6) motion to dismiss. Defendants must file their answer to the complaint within thirty (30) days from the date this order is filed.

**IT IS SO ORDERED.**

DATED: January 23, 2018

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT